# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JORGE AGUIRRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-18-1111-STE |
| ) | |
| ANDREW M. SAUL, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 254-267). On review, the Appeals Council remanded the case for a second hearing. (TR. 274-275). Following that hearing, the ALJ issued a second

unfavorable decision. (TR. 51-64). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the second unfavorable decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 26, 2014, his alleged onset date. (TR. 54). At step two, the ALJ determined that Mr. Aguirre had the following severe impairments: right femur and right hip fracture, status post two open reduction internal fixations (ORIF) (femoral neck and for comminuted proximal diaphyseal fracture of the right femur) and total hip replacement; HIV; anxiety disorder; and depression. (TR. 54). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 55).

At step four, the ALJ concluded that Mr. Aguirre retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he could stand/walk for thirty minutes at a time, and up to two hours total in an eight-hour day. He could sit for six hours out of an eight-hour day. The individual could understand, remember, and carry out simple and detailed instructions, with no more that occasional public contact.

(TR. 56). With this RFC, the ALJ concluded that Mr. Aguirre was unable to perform his past relevant work. (TR. 62). Thus, the ALJ proceeded to step five and presented the RFC

limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 131). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 131). The ALJ adopted the VE's testimony and concluded that Mr. Aguirre was not disabled at step five based on his ability to perform the identified jobs. (TR. 63).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

### IV. ISSUE PRESENTED

On appeal, Mr. Aguirre alleges the ALJ erred in failing to accommodate Plaintiff's use of an assistive device in the RFC or consider its impact on the occupational base.

3

(ECF No. 13:4-8). The Court agrees that error occurred at step four, but declines to consider whether the occupational base had been erroneously affected.

## V. ERROR IN THE ALJ'S FAILURE TO PROPERLY EVALUATE PLAINTIFF'S NEED FOR AN ASSISTIVE DEVICE

As alleged by Mr. Aguirre, the ALJ failed to properly evaluate Plaintiff's need for an assistive device when evaluating the RFC.

### A. Factual Background/Medical Evidence

In June 2014, Plaintiff fractured the shaft of his right femur which was treated via surgical implantation of an intramedullary rod. (TR. 937). In August 2014, Plaintiff fell from a porch and fractured the neck of his right femur which was treated with a closed fracture reduction with three cannulated screws. (TR. 937). In September 2014, Plaintiff's physician, Dr. David Teague, noted the importance of no weight-bearing, and recommended that Plaintiff use a wheelchair or crutches as needed. (TR. 1027). In January 2015, Plaintiff was walking and was struck by an automobile which caused him increased pain and difficulty in ambulating. (TR. 968).

On January 28, 2015, the hardware from Plaintiff's prior surgeries was removed, which revealed a healed right femur, but no healing of the right femoral neck fracture. (TR. 936-937, 1039-1041). On February 17, 2015, Plaintiff saw Dr. Rishi Thakral, an orthopedist, who noted that Plaintiff was "unable to walk or weightbear." (TR. 936-940, 947-951). Dr. Thakral discussed options with Mr. Aguirre, and on March 18, 2015, Plaintiff underwent a right total hip replacement. (TR. 813-816, 912-925).

On March 31, 2015, Plaintiff was able to partially bear weight on his right leg with the use of a walker or crutches. (TR. 907). On April 2, 2015, Dr. Thakral opined that

4

Plaintiff needed a walker frame or crutches to ambulate and that he would not be able to bear any weight on the right leg for six weeks. (TR. 973-974). On February 9, 2016, Dr. Thakral noted that Plaintiff was "mobilizing well," but complaining of intermittent pain and discomfort around the trochanter region and anterolateral aspect of the thigh. (TR. 1094). On October 13, 2016, Plaintiff reported being able to ambulate and denied any problems with his hip. (TR. 1121). On November 3, 2016, Plaintiff reported pain in his right hip which he felt radiated upwards into his back, but showed no difficulty with range of motion in his hip or with walking. (TR. 1124). On December 1, 2016, Dr. Thakral noted that Plaintiff could walk without an assistive device. (TR. 1136, 1138).

On April 11, 2017, Dr. Thakral's examination of Plaintiff revealed "significant tenderness to palpation along his greater troch as well as posteriorly and along his lumbar spine as well." (TR. 1233). To help alleviate Plaintiff's pain, Dr. Thakral injected Mr. Aguirre's right hip and wrote him a prescription for a walker. (TR. 1233-1235). On July 25, 2017, Mr. Aguirre saw Dr. Thakral for a follow up visit, complaining of exacerbating pain in his right hip. (TR. 1343-1344). On examination, Dr. Thakral noted that Plaintiff demonstrated "voluntary muscle rigidness" in getting up and that Plaintiff "walked reasonably okay and used a cane, however, to support on the left hand side." (TR. 1343).

### B. Relevant Social Security Ruling

Social Security Ruling 96-9p provides that assistive devices such as canes and walkers will be found medically necessary when there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7

5

(July 2, 1996). In evaluating an individual's need for an assistive device, the adjudicator must always consider the particular facts of a case. SSR 96-9p, 1996 WL 374185, at *7. For example, according to the SSA:

> [A]n individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Id.* at *7.

## C. Error in the Omission of an Assistive Device in the RFC

In formulating the RFC, the ALJ concluded that Mr. Aguirre could perform "light" work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), further limited by an ability to only stand and/or walk for thirty minutes at a time, for up to two hours in an eight-hour day. (TR. 56). Even so, the ALJ did not account for Plaintiff's need for a walker or a cane in the RFC. *See* TR. 56.

As support for the RFC, the ALJ specifically stated that:

- the finding for Mr. Aguirre's ability to perform light work was supported by the opinions of State Agency physicians at the initial and reconsideration levels of the application process; and

- the finding for Plaintiff's ability to only stand and or walk for two hours was supported by Dr. Thakral's opinions dated December 1, 2016; April 11, 2017; and July 25, 2017.

(TR. 62). With this RFC, the ALJ concluded that Plaintiff was not disabled based on his ability to perform three jobs. (TR. 63).

Plaintiff argues that the ALJ "failed to include Mr. Aguirre's use of a walker in his RFC or consider its impact on the occupational base." (ECF No. 13:4). According to Mr. Aguirre, a prescription from his orthopedist for a walker provides substantial evidence that the walker was "medically necessary" to support the inclusion of an assistive device in the RFC. (ECF No. 13:4-8). Plaintiff contends that the ALJ erred in failing to even consider whether an assistive device was necessary, which thereafter affected his findings at step five. (ECF No. 13:4-8). The Court agrees.

A prescription is not required for a hand-held assistive device to be medically necessary, only "medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191 n. 1 (10th Cir. 2009). Here, the medical evidence establishes Plaintiff's need for an assistive device—on April 11, 2017, Dr. Thakral wrote Plaintiff a prescription for a walker and as late as July 2017, Dr. Thakral noted that Plaintiff "walked reasonably okay" with the use of a cane for support. (TR. 1233-1235, 1343). As a result, the ALJ was required to explain the effect of an assistive device, both on the RFC and at step five. *See* SSR 96-9p, *supra*.

In assessing the RFC, the ALJ noted the walker prescription and stated that Plaintiff "was reportedly 'doing okay' at a July 2017 exam." (TR. 59). This finding appeared to form the basis of the ALJ's decision to omit the need for an assistive device in the RFC. But the ALJ mischaracterized Dr. Thakral's actual opinion which stated that Plaintiff "walked reasonably okay" *with the use of a cane for support*. (TR. 1343). As noted by

7

Mr. Aguirre, "the ALJ may not pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." (ECF No. 13:8, citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (internal quotation omitted); *see Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

In her response, the Commissioner presents four arguments: (1) Plaintiff improperly relied on Dr. Thakral's prescription for a walker as evidence that the walker was "medically necessary;" (2) the RFC which failed to accommodate an assistive device was properly supported by findings from the State Agency physicians, Dr. Thakral's December 1, 2016 opinion, and other evidence in the record; (3) the ALJ properly discounted Plaintiff's testimony regarding the need for an assistive device; and (4) Plaintiff is attempting to re-weigh the evidence. The Court finds that the Commissioner's arguments are without merit.

### 1. Dr. Thakral's Walker Prescription

The Commissioner argues that Plaintiff has "picked one solitary cherry from the metaphorical tree—Dr. Thakral's April 2017 examination and walker prescription—and argues that it outweighs the bushels of cherries supporting the ALJ's decision." (ECF No. 16:11). Defendant contends that "the solitary cherry that Plaintiff chose to pluck was rather flavorless" in light of:

- the fact that Dr. Thakral only prescribed a walker after Plaintiff requested one;

8

- Plaintiff's failure to display hip pain during the "logroll" test while in full extension; and

- the fact that Plaintiff had reported getting in a physical altercation prior to his July 2017 examination with Dr. Thakral.

(ECF No. 16:10-11). These arguments are not persuasive.

First, as stated, the medical evidence established Plaintiff's need for an assistive device—as late as July 2017 when Dr. Thakral noted that Plaintiff "walked reasonably okay" with the use of a cane for support. (TR. 1343). Dr. Thakral's prescription for a walker only underscored the fact that an assistive device was medically necessary. The Commissoner apparently believes that Plaintiff's request for a walker somehow detracts from the fact that the device was medically necessary. *See* ECF No. 16:11 ("[a]lthough Dr. Thakral prescribed a walker, he did so only after Plaintiff requested one."). The Court disagrees. While it is true that Plaintiff requested the prescription, Dr. Thakral prescribed it after Plaintiff stated that the walker he was currently using had become unstable. (TR. 1233).

Second, the "logroll test" is one performed by a physician with the patient lying on an examination table and would be irrelevant regarding Plaintiff's ability to bear weight on his right hip, either with or without an assistive device.[1]

Finally, Defendant implies that the only reason Plaintiff was having difficulty walking during his July 2017 visit with Dr. Thakral is because Mr. Aguirre had recently been involved in a physical altercation, during which Defendant speculates Plaintiff had

---

[1] https://www.bing.com/videos/search?q=Log+Roll+Exam+Physical&&view=detail&mid=C73E2BEE8896A2906F1EC73E2BEE8896A2906F1E&&FORM=VRDGAR

not been ambulating with a walker. (ECF No. 16:11-12). Defendant's speculation does not provide substantial evidence to conclude that a walker was not medically necessary.

### 2. Findings from the State Agency Physicians, Dr. Thakral's December 1, 2016 Opinion, and Other Evidence

As stated, in support of the RFC, the ALJ specifically cited opinions from: (1) State Agency physicians Drs. Judy Marks-Snelling and Frederick Robley and (2) Dr. Thakral, which was dated December 1, 2016. *See supra*. The Commissioner states that these opinions provide substantial evidence in support of the RFC. (ECF No. 16:8). The Court disagrees. Regarding the ALJ's reliance on the opinion from Dr. Marks-Snelling, the Court notes that she offered her opinion on January 23, 2015, before: (1) Plaintiff's January 28, 2015 surgery to remove hardware in his hip and (2) Dr. Thakral's February 17, 2015 evaluation of Mr. Aguirre where he noted that Plaintiff was "unable to walk or weightbear." (TR. 936-940, 947-951). And Dr. Robley's May 22, 2015 opinion relied on Dr. Thakral's March 31, 2015 opinion that Plaintiff was "showing no signs of complication" following his March 18, 2015 total hip replacement. (TR. 211). But at the March 31, 2015 appointment, Dr. Thakral specifically noted that Plaintiff was only able to "weight bear partially on his right lower extremity with a walker frame/crutches. (TR. 907). Although Dr. Robley noted Plaintiff's need for an assistive device as of the March 31, 2015 appointment, he ultimately concluded that Plaintiff was capable of performing a full range of light work, without the use of an assistive device. (TR. 209-211).

Dr. Thakral's December 1, 2016 opinion likewise does not provide substantial evidence for the RFC. Although that opinion stated that Plaintiff did not need an assistive device at that time, Plaintiff's condition subsequently deteriorated and Dr. Thakral

ultimately prescribed a walker for Plaintiff on April 11, 2017. (TR. 1233-1235). Three months later, Dr. Thakral noted Plaintiff's difficulty in arising from a seated position and stated that Mr. Aguirre "walked reasonably okay" with the use of a cane for support. (TR. 1233-35, 1343).

Based on the timing of the forgoing opinions and subsequent evidence, the Court concludes that these opinions, alone, do not provide substantial evidence to support an RFC which failed to accommodate Plaintiff's need for an assistive device. *See Scott v. Berryhill*, 271 F. Supp. 3d 1235, 1247 (N.D. Okla. 2017) (noting that "evidence demonstrating significant deterioration of symptoms … would lend support to the possibility of an ALJ reaching a different conclusion.").

In addition to the evidence the ALJ specifically relied on in support of the RFC, the Commissioner directs the Court's attention to other evidence in the record which she believes supports the RFC. (ECF No. 16:8-10). Specifically, Defendant cites:

- a November 18, 2014 opinion that Plaintiff could perform "sit-down" work;

- an April 2, 2015 opinion that Plaintiff would briefly need a walker, but that he could resume independent activities six weeks following his surgery date of March 18, 2015;

- clinical findings of "normal gait without the use of an assistive device" in February and March of 2017;

- a March 31, 2015 opinion from Dr. Thakral;

- an October 13, 2016 opinion from Dr. Thakral;

- "normal physical findings, including normal gait, range of motion, and strength" between June 2015 and July 2017;

- findings of "normal posture and gait" between June 2015 and February 2017;

11

- Dr. Thakral's findings of "normal gait" in February and November 2016; and
- findings from September 2015 which reflected "normal gait without the use of an assistive device."

(ECF No. 16:9-10). The Court concludes that these findings do not constitute substantial evidence in support of the RFC.

First, the November 18, 2014 record which noted that Plaintiff could perform sit-down work also noted that to ambulate, Plaintiff "should use a cane opposite his sore hip." (TR. 636). Second, the findings of "normal gait without the use of an assistive device" dated February and March of 2017 did not reflect that Plaintiff was not using an assistive device—the records only showed that Plaintiff exhibited "normal posture and gait"—the Commissioner has mischaracterized this evidence (TR. 1321, 1327). Third, Defendant cites page 907 of the transcript for findings that Mr. Aguirre was "making good progress, mobilizing independently without any walking aid … and he was happy with his limb length and felt he could walk normally." (ECF No. 16:10). But page 907 of the transcript does not reflect such findings. Instead, during that visit, Dr. Thakral noted that Plaintiff was able to "weight bear partially on his right lower extremity with a walker frame/crutches." (TR. 907). Perhaps the Commissioner has cited an incorrect page in support of his argument, but "it isn't [the Court's] obligation to search the record." *Kirkpatrick v. Colvin*, 663 F. App'x. 646, 649 (10th Cir. 2016).

Fourth, Defendant's reliance on: (1) "normal physical findings, including normal gait, range of motion, and strength" between June 2015 and July 2017; (2) findings of "normal posture and gait" between June 2015 and February 2017; and (3) findings from

September 2015 which reflected "normal gait without the use of an assistive device" were brief notations made during a review of systems at Oklahoma Pain and Wellness where Plaintiff was being treated for opioid use disorder and the Infectious Disease Institute where Plaintiff was treated for HIV. (TR. 1007, 1101, 1153, 1161, 1177, 1185, 1193, 1201, 1209, 1215, 1221, 1228, 1290, 1305, 1321, 1327, 1333, 1338, 1359). None of these records reflect whether Plaintiff was ambulating with or without the use of an assistive device during these visits. And other evidence from Mr. Aguirre's treating orthopedist indicate that during at least a portion of this time period, Plaintiff *was* using an assistive device to ambulate. *See* TR. 1233-1235, 1343-1344.

Discounting this evidence, what remains is the Commissioner's reliance on: (1) an April 2, 2015 opinion that stated Plaintiff's 6-week post-surgical need for an assistive device; (2) an October 13, 2016 opinion from Dr. Thakral; and (3) Dr. Thakral's findings of "normal gait" in February and November 2016. But this evidence is insufficient to support an RFC which fails to accommodate an assistive device from June 6, 2014 through February 28, 2018, in light of evidence which documented: (1) Dr. Thakral's April 11, 2017 prescription of a walker for Mr. Aguirre; (2) a July 25, 2017 notation from Dr. Thakral that Plaintiff was walking "reasonably okay" with the use of a cane for support;  and (3) Plaintiff's August 10, 2017 testimony that he had been using a walker to get out of bed and walk around the house since June 2014 and that outside the house, he used a four-pronged cane to ambulate. (TR. 122-123, 1233-1235, 1343).

### 3. Plaintiff's Testimony

Third, the Commissioner argues that the ALJ properly discounted Plaintiff's testimony regarding the need for an assistive device, stating that "Plaintiff's reported symptoms … cannot support his argument that a walker was medically necessary." (ECF No. 16:9). In support, Defendant points to four pages in the administrative decision, which she states are "well-supported reasons for concluding that Plaintiff's symptoms were not as severe as he claimed, including the objective medical evidence, the effectiveness of treatment, and his activity level." (ECF No. 16:8-9). But the ALJ specifically discounted Plaintiff's subjective complaints, stating that records from October 7, 2014 and November 18, 2014 reflected that:

- Plaintiff's condition had "improved" following surgery for repair of his fractured femoral neck;

- Plaintiff was continuing to make satisfactory progress; and

- Plaintiff's range of motion testing and imaging showed healing fractures, no crepitus, distal neurocirculatory status intact, and Plaintiff could bear weight.

(TR. 57, citing TR. 636, 638). These rationales do not provide substantial evidence for discounting Plaintiff's subjective complaints regarding his need for an assistive device. Although the records noted an "improved status," and that Plaintiff was making "satisfactory progress," the cited records do not discuss range of motion testing and imaging, nor do they state that Plaintiff could bear weight. *See* TR. 636, 638. Instead, these records stated that Mr. Aguirre "should use a cane opposite to his sore hip" and "[h]e will remain on crutches or in a wheelchair for an additional 6 weeks." (TR. 636, 638).

#### 4. Mr. Aguirre is not Attempting to Re-Weigh the Evidence

Finally, Defendant argues that Plaintiff is asking the Court to engage in an impermissible re-weighing of the evidence to reach a finding of disability. (ECF No. 16:12). But Plaintiff is alleging legal error—that the ALJ erred in failing to discuss the impact of Plaintiff's need for an assistive device—as it pertains to the RFC and Plaintiff's ability to perform other work at step five. (ECF No. 13:4-8). The Commissioner's arguments focused primarily on whether substantial evidence existed to support the RFC, but the issue is whether the ALJ had properly considered Plaintiff's need for an assistive device and its potential affect on his ability to work. *See Parker v. Comm'r, SSA*, ___ Fed. App'x ___, 2019 WL 2274497, at *3 (10th Cir. Apr. 30, 2019) ("If Mr. Parker is right about the legal error, we must reverse even if the agency's findings are otherwise supported by substantial evidence).

### D. Summary

Mr. Aguirre has established a need for an assistive device and the RFC failed to accommodate the same. In support of the RFC, the ALJ relied on evidence which predated Plaintiff's condition as it deteriorated over time and involved multiple accidents and injuries. Although the ALJ noted that Plaintiff "was reportedly 'doing okay' at a July 2017 exam," the ALJ mischaracterized Dr. Thakral's opinion which actually stated that Plaintiff "walked reasonably okay" with the use of a cane for support. (TR. 1343). The error warrants reversal. *See McAnally v. Berryhill*, No. CIV-16-459-M, 2017 WL 4080696, at *3 (W.D. Okla. Aug. 29, 2017), *report and recommendation adopted*, No. CIV-16-459-M, 2017 WL 4079407 (W.D. Okla. Sept. 14, 2017) (recommending reversal because the ALJ

failed to address an opinion which stated that the claimant required a cane for walking, an opinion which was "at odds" with the claimant's ability to perform "light" work).

### E. Plaintiff's Remaining Allegation

Mr. Aguirre also argues that "[b]ecause the ALJ failed to determine whether the walker was medically necessary, and because he failed to even include the walker in his hypothetical questions to the VE, his ultimate RFC and the jobs found at step 5 are not supported by substantial evidence." (ECF No. 16:8). But at this juncture, and because of the recommended remand at step four, any conclusion regarding the availability of jobs at step five would be premature. Thus, the Court will decline to consider this issue. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on June 20, 2019.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE